UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| DARRELL W. WILLIAMS<br>        LA. DOC #205736 | CIVIL ACTION NO. 3:14-cv-1039 |
| VS. | SECTION P |
| | JUDGE ROBERT G. JAMES |
| KEVIN COBB, ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Darrell W. Williams, proceeding *in forma pauperis*, filed the instant civil

rights complaint pursuant to 42 U.S.C. §1983 on May 23, 2014. Plaintiff is an inmate in the

custody of Louisiana's Department of Corrections (DOC). He is confined at the Franklin Parish

Detention Center (FPDC) and he complains that he is being denied appropriate medical care and

that he was terminated from his prison job, lost his status as a trusty, and was transferred to a less

commodious dormitory when he complained to the Sheriff. He sued Sheriff Cobb, Warden Chad

Lee and Assistant Warden Hilton Griffen. He prayed for declaratory judgment, injunctive relief,

and compensatory and punitive damages. This matter has been referred to the undersigned for

review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the

standing orders of the Court.  For the following reasons it is recommended that the complaint be

**DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

In his original complaints [Docs. 1 and 5], plaintiff alleged his status as an inmate in the

custody of the DOC. According to plaintiff, on March 26, 2014, he was transferred from the

Louisiana State Penitentiary (LSP) to FPDC. While at LSP, plaintiff received medical care for

unspecified "serious medical needs." He alleged that he has not been examined by a physician or the prison medical staff since his arrival at FPDC[1], and that he was taken off of his unnamed medication on May 15, 2014.  According to plaintiff, on or about May 15, 2014 Assistant Warden Griffen transferred plaintiff from Peach Dorm to Pear Dorm and removed plaintiff from his prison job and trusty status. According to plaintiff, this was in retaliation for having written a complaint to Sheriff Cobb. He also complained, in general,  about the conditions of confinement at Pear Dorm.  On June 23, 2014, plaintiff was directed to amend his complaint to provide additional facts in support of his claims. [Doc. 9]

In response to the amend order, on June 30, 2014, plaintiff filed a motion to serve the defendants. [Doc. 10] Thereafter, on July 8, 2014, plaintiff submitted an amended complaint in the form of a motion to amend. [Doc. 11] With regard to his loss of status and retaliation claims, plaintiff reiterated that he was transferred from LSP to FPDC on March 26, 2014. Upon his arrival he was interviewed by Warden Lee.  Plaintiff advised Lee that he had served 24 years in custody; that he had less than 2 years remaining on his sentence; and that he was thus eligible for work release as of February 23, 2013.  He advised Lee that he was a non-violent offender, that he was not a sex offender, and that he was previously enrolled in the "Certified Treatment and Rehabilitation Program (CTRP), a re-entry and self-help program which would make him eligible to earn an additional 180 days of good-time credits.  Lee thereupon advised plaintiff that he would be placed in the Transitional Work Program and given the opportunity to earn good time for his participation in CTRP.

---

[1] As is noted below, in his amended complaint, plaintiff alleged that he was examined by a nurse at FPDC on June 26, 2014.

However, the FPDC does not operate a CTRP.  Nevertheless, on April 15, 2014, plaintiff was assigned trusty status and assigned to work on Town Crew-3. Then, on May 12, 2014, plaintiff wrote a letter to Sheriff Cobb inquiring about the policy and procedures regarding assignment to CTRP.  On May 15, 2104, plaintiff was informed "... that Assistant Warden Griffen decided that he was not going to work me any longer ..." because plaintiff complained to Sheriff Kevin Cobb that two other offenders (who arrived at FPDC two weeks after plaintiff) were assigned trusty status and were allowed to participate in transitional work programs  "due to being geographically located."  Further, according to plaintiff, on July 3, 2014, the defendants allowed an "ineligible inmate" with a federal detainer to participate in the transitional work program which, according to plaintiff, proves that Lee's decisions are not only geographically motivated but also racially motivated. According to plaintiff, Lee and Cobb "affirmatively participate in acts that cause Constitutional deprivations and implement unconstitutional policies ..." which do not comply with DOC regulations.

With regard to his medical care claims plaintiff alleged that he was interviewed by Griffen who produced a medical questionnaire. Plaintiff informed Griffen "that he was under a Doctor's care and at the time was being treated for a serious medical need..." He further advised Griffen that he was prescribed a second medication for blood pressure for a period of 30 days. According to plaintiff, at the conclusion of this 30 day regimen, he was to have blood work to determine the medication's effectiveness.  Plaintiff also complained of rectal bleeding and requested to see a physician.  On June 26, 2014, plaintiff was examined by a nurse at FPDC who determined that plaintiff's blood pressure was 187/96. Plaintiff further advised that he was not receiving a low sodium diet as ordered when he was incarcerated at LSP. The nurse advised

plaintiff that his medical records were not transmitted by LSP.

Plaintiff concluded his amended complaint by praying for (1) a judgment declaring the acts of the defendants to be deliberate violations of plaintiff's rights; (2) that plaintiff be granted a period of 360 days good time credits; (3) that plaintiff be awarded damages as requested in his original complaints.

### *Law and Analysis*

### *1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his  complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Work-Release and Due Process*

Plaintiff implies that his inability to participate in a work-release program deprives him of liberty or property without due process in violation of the Fourteenth Amendment. Plaintiff has neither a liberty nor property interest in  work-release and therefore any implied due process claims are frivolous.  La. R.S.15:1111, the statute establishing the work-release program, provides in part, "The Department [of Corrections] shall establish rules for the administration of the work release program and shall determine those inmates who may participate in the release program. Any convict sentenced to imprisonment at hard labor shall be eligible at any time during his sentence to participate in the work release program..."

In *Welch v. Thompson*, 20 F.3d  636 (5th Cir. 1994),  the Fifth Circuit determined that La. R.S.15:1111 entrusts the actual operation of the work release program to the LDOC.  The court further determined that the statute does not dictate to the LDOC who it must put on work release. In short, the Fifth Circuit has held that "...La. R.S.15:1111 does not create a liberty interest subject to the Due Process Clause." *Welch v. Thompson*, 20 F.3d  636, 644 (5th Cir. 1994). Since the statute does not create a protected liberty interest for eligible prisoners, there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiff cannot show that a constitutional right has been violated.

To the extent that plaintiff also implies that he was deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, such an argument also lacks an arguable basis in law and fact.  In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit, a person must have more than a "unilateral expectation" of it.  Rather, he

must "have a legitimate claim of <u>entitlement</u> to it." *Id.* (emphasis supplied).   Thus, the "property

interest" protected by the due process clause of the Fourteenth Amendment is defined by the

concept of "entitlement," which in turn describes "the security of interests that a person has

already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. In other words, a person's

interest in a benefit is a property interest only "if there are such rules or mutually explicit

understandings that support his claim of entitlement to the benefit..." *Evans v. City of Dallas*, 861

F.2d 846, 848 (5th Cir. 1988. Plaintiff can point to no rule or understanding which entitle him to

participate in the program. In any event, the Fifth Circuit has also held that prisoners have no

property interest work-release employment. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th

Cir.1995). Plaintiff is not entitled to participate in any particular work-release program and

therefore to the extent that he implies that he was denied either a liberty interest or a property

right in violation of the Due Process Clause, such claims are subject to dismissal as frivolous.

Plaintiff also implies that he is entitled to a prison job trusty status. Plaintiff mistakenly

assumes that he has a Constitutional right to participate in such programs. Inmates do not a have

a protected property or liberty interest in rehabilitation programs. *Jackson v. Cain*, 864 F.2d

1235, 1250 (5th Cir.1989); *Moody v. Baker*, 857 F.2d 256, 257–58 (5th Cir.1988); see also

*Moody v. Doggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (Prisoner

classification and eligibility for rehabilitation programs are not subject to "due process"

protections). The "state has no constitutional obligation to provide basic educational or

vocational training to prisoners." *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988).

Thus, plaintiff's complaint, insofar as it asserts the existence of a constitutional right to

rehabilitation programs, a prison job, or eligibility for work-release, fails to state a claim for

which relief may be granted.

### 3. Retaliation

In his original complaints, plaintiff alleged that on or about May 15, 2014, Assistant Warden Griffen transferred him from Peach Dorm to Pear Dorm and removed him from his prison job and trusty status. According to plaintiff, this was in retaliation for plaintiff's having written a complaint to Sheriff Cobb.  In his amended complaint plaintiff alleged that he took issue with the manner in which trustees were selected and accused the defendants of "geographical" and "racial" favoritism.

To prevail on the claim for retaliation under section 1983, a prisoner must prove (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which, in this context means  that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir.1998). The prisoner must produce direct evidence of motivation, or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir.1995).  The plaintiff must allege more than just his personal belief that he is the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1999).

Plaintiff has alleged retaliation in only a conclusory fashion. He claims that he was transferred from one dorm to another and that he lost his trusty status as a result of a letter he wrote to Sheriff Cobb; however, in his amended complaint he implied that trustees are selected based upon their race and place of origin.  It thus appears that plaintiff cannot establish that but for his complaint to Sheriff Cobb, he would have permitted him to retain his trusty status.

*4. Medical Care*

Plaintiff's medical care claim arises under the Eighth Amendment's prohibition against cruel and unusual punishment.  His claim amounts to an Eighth Amendment violation only if he can establish deliberate indifference resulting in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).  The facts  underlying a claim of deliberate indifference must clearly establish the serious medical need in question and the alleged indifference of the prison officials. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "[T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. (internal quotation marks and citation omitted). "[M]ere negligence, neglect, or medical malpractice" do not constitute deliberate indifference. *Varnado*, 920 F.2d at 321. Even "gross negligence" does not establish deliberate indifference. *Hernandez v. Tex. Dep't of Prot. and Reg. Servs*., 380 F.3d 872, 882 (5th Cir. 2004).  Plaintiff has not described the "serious" medical condition, nor has he identified the medication that he was denied.  He claimed that he experienced high blood pressure on one occasion but attributed it to the failure of the prison authorities to provide a low sodium diet. He further claimed one incident of bleeding, however, it appears that he was thereafter examined by a health care professional. In other words, it appears that plaintiff merely disagrees with the diagnosis and treatment provided by the FPDC staff. At worst, he states a

claim for medical malpractice and not deliberate indifference.

### 5. Conditions of Confinement

Plaintiff complains in general about the conditions of confinement in Pear Dorm. Complaints about prison conditions are also analyzed under the Eighth Amendment.  While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while  the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Plaintiff's conditions of confinement complaint simply does not rise to the level of Eighth Amendment violations.

### *Conclusion and Recommendation*

Therefore,

Plaintiff's Motion to Serve [Doc. 10] is **DENIED**; and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED**

**WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir.  1996).**

In Chambers, Monroe, Louisiana, August 20, 2014.

_____
**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**

10